366 A.2d 1248

**COMMONWEALTH of Pennsylvania**

**v.**

**Buddy Lee STROUP, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1976.

Decided Dec. 15, 1976.

174

John Woodcock, Jr., Public Defender, Hollidaysburg, for appellant.

Edward S. Newlin, Asst. Dist. Atty., Hollidaysburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appeal is taken to our Court from judgment of sentence rendered following jury trial and adjudication of guilt on April 4, 1975. The first trial of appellant on the charge of which he was found guilty began, before a jury, on March 4, 1975.[1] This resulted in a mistrial, declared *sua sponte,* on the afternoon of the first day of trial. An Order issued which reads as follows:

NOW, this 14th day of March, 1975, it appearing to the Court that there was a compelling reason for the entry of a Mistrial by virtue of the fact that during the course of the trial of this cause, without notice or notification by any party to the Court, counsel for the

1. The indictment charged theft of property lost, mislaid, or delivered by mistake, "Crimes Code", Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 3924.

defendant was involved in the disposition of another matter before another Court in another Court Room and the defendant having expressed the desire not to proceed without the presence of his counsel and in view of the fact that the Court was involved in other matters, a Mistrial was declared. This for the purpose of protecting the defendant and according to the defendant the request which he had made for representation by his counsel.

IT IS THEREFORE ORDERED, DIRECTED AND DECREED that the time within which this case shall again be brought to trial is extended and including the 11th day of April, 1975.

By the Court:

/s/ Robert C. Haberstroh, P. J.

A most explanatory Order issued denying appellant's petition for discharge of indictment, following hearing thereon. Dated April 3, 1975, this Order in full is as follows:

After hearing in the above captioned matter, the reception of testimony in connection therewith, and argument being had relative thereto, it is the judgment, opinion and finding of this Court that there exists in this matter no proper or reasonable grounds upon which to grant the prayer of the petition for the discharge of the indictment in this matter.

At the term of Court at which this matter was listed for trial by jury, there were twenty-two cases listed for trial and prior to the inception of the term, these cases were assigned to the respective Courts, the Honorable Paul S. Foreman in Courtroom No. 2 and the undersigned in Courtroom No. 1. Ample notice was given to all parties concerned of the fact that the above captioned matter would be reached for trial on Tuesday, March 4, 1975 and the case was actually reached for trial on that day and date in Courtroom No. 1. The jury was selected, sworn tes-

timony taken, and at or about 12:15 p. m. on that date this Court recessed for the noon period, until 1:30 that afternoon. Notice and knowledge of that fact was accorded to the jury, to the defendant, to the defendant's counsel,. to the Commonwealth and to all witnesses involved in the case.

This Court reconvened at 1:30 p. m., with the counsel for the defendant absent from the Courtroom, and upon inquiry being made, the Court was advised that Mr. Woodcock, counsel for the defendant, was engaged in the presentation of a matter in Courtroom No. 2, and upon inquiry by this Court through a tipstaff of the Court, and as testified to in this matter by Mr. Woodcock, the Court was advised that Mr. Woodcock would be available "as soon as this is over. I will be over", referring to the proceeding that had apparently been inaugurated in Courtroom 2 during the noon recess of this Court. This Court had no notice or knowledge of the facts involved, the parties involved, or any other matters relative to the case that intervened in Courtroom No. 2 and neither counsel for the defendant nor any other person brought to the attention of the Court the type and nature of proceeding there involved, and based upon the testimony offered in this matter, it is apparent that matters involving the *Commonwealth of Pennsylvania vs. James Palmer Reed and Commonwealth of Pennsylvania vs. Stanley Nale* were also being disposed of in the intervening proceeding. Neither of these cases had been scheduled for trial or disposition at the term of Court in question nor were there any advices given to this Court, who is charged with the assignment of cases, relative to the intervention of these matters.

It is the judgment and opinion of this Court that its inherent powers to conduct the affairs of this Court, and by this Court I am referring to the Court of Common Pleas of Blair County, Pennsylvania, in a proper,

orderly fashion make it needful and necessary, and it was needful and necessary in the instant case, to exercise those inherent powers of the Court to enter and declare a mistrial on its own motion.

This Court deemed then and now that the circumstances were most appropriate for the entry of a mistrial and the continuance of the cause. There was no person present representing the defendant and he asked for and was entitled to the assistance of counsel, of his counsel, Mr. Woodcock, and that certainly there was a manifest necessity for the declaration of a mistrial and the continuance of the cause so that the matter would not be proceeded with in detriment to the rights of the defendant in this matter.

We are further of the opinion that the ends of public justice also require consideration in this matter. Not alone are the rights of the defendant in this case involved, but the rights of all other defendants involved in the proceedings that had been listed for trial during the two-week period, dating from February 25 through and beyond March 4, 1975, and in order that this Court might be able to proceed in an orderly fashion in the discharge of the administrative duties devolving upon it and in furthering the ends of public justice, and in continuing an orderly conduct of the affairs of the Court, this Court was then and is now of the opinion that the only remedy was to declare a mistrial and continue the cause.

In this case it must be borne in mind that we had present in the Courtroom for the purpose of the trial of this cause, the jury empaneled in the matter, we had the remaining members of the jury panel present in the Courtroom to proceed with the trial of other causes, all of the witnesses in all of the cases were present and awaiting the convenience of counsel who did not see fit to bring to the attention of this Court or did he when interrogated by the tipstaff of this Court,

give any indication as to when he would be available except that he would be available as soon as the intervening matter was disposed of.

For these reasons, the petition for discharge of the indictment in the above captioned matter is refused and dismissed and the matter is directed to be proceeded with in accordance with the law applicable thereto.

BY THE COURT:

/s/ Robert C. Haberstroh, P. J.

We wish to reiterate, from our study of the transcribed testimony from the afternoon session of court on March 4, 1975, that direct examination was conducted by the Commonwealth of two witnesses. Following the testimony of each, the Court inquired of appellant whether he had any questions of the witnesses. Upon each occasion he answered that he wanted to wait for his lawyer. The Commonwealth then rested, and a mistrial was declared.

The sole question which we shall consider is the propriety of the granting of a mistrial upon the above-referenced facts. Appellant's second argument, going to sufficiency of the evidence for conviction, is outside the scope of our necessary deliberations because of the disposition herein.

██ A trial judge "may declare a mistrial only for reasons of manifest necessity". Pa.R.Crim.P. 1118(b). This "manifest necessity" test or standard must be grounded upon a consideration of the importance to the defendant to be tried by the tribunal first impanelled. *Commonwealth v. Lauria,* 450 Pa. 72, 297 A.2d 906 (1972). This standard has been held to include attention to the cause of public justice. The "Government [has] the right to retry a defendant after a mistrial only where 'there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated'." *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 1022, 43 L.

Ed.2d 232 (1975) citing *United States v. Perez*, 9 Wheat. (22 U.S.) 579, 580, 6 L.Ed. 165 (1824). If the appropriate circumstances of manifest necessity and interests of justice do not exist, then the double jeopardy clause of the Fifth Amendment of the United States Constitution prevents retrial. *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974), cert. denied 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670. This rule was made applicable to the states through the Fourteenth Amendment. *Commonwealth ex rel. Walton v. Aytch*, 466 Pa. 172, 352 A.2d 4 (1976), referring to *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). However, "another trial is allowable where a court *sua sponte* declares a mistrial without the defendant's consent and over his objection where 'manifest necessity' justifies the declaration of the mistrial". *Aytch, ibid.*, 352 A.2d at 6. See also *Commonwealth v. Wideman*, 453 Pa. 119, 306 A.2d 894 (1973).

■■ The trial court may exercise its discretion on the subject of granting a mistrial upon a finding of "manifest necessity" therefor. *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975), cert. denied, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 referring to *United States v. Perez, supra*. Such finding can be made only upon a case-by-case basis. *Commonwealth v. Coleman*, 235 Pa.Super. 379, 341 A.2d 528 (1975), allocatur refused October 28, 1975, and *Commonwealth v. Monte*, 459 Pa. 495, 329 A.2d 836 (1974). Guidance for this determination is given in *Robson, supra*, and includes situations such as the trial judge's or key witness' prolonged absence, or the inability after many hours' deliberation of the jury to return a verdict. If any doubt should exist as to the presence of "manifest necessity" or the "interest of public justice" in the findings of the lower court's grant of mistrial, then the doubt will be resolved in favor of the accused and double jeopardy shall prohibit retrial. *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976).

■ Based upon our study of the instant facts, we conclude that it was not in the interests of public justice or manifest necessity to have declared a mistrial. Counsel for appellant was absent from the afternoon call of this case. He was attending to court matters in the same Court of Common Pleas, merely across the hall from appellant's courtroom. There is nothing in the record to indicate that his absence was to be for a prolonged period or that he was detained on other than temporary matters in pending cases.[2] The transcript does not indicate a thorough inquiry by trial court into the reasons for and possible length of his absence. This lack of inquiry is particularly prejudicial in light of the fact that the lower court permitted the trial to continue with the Commonwealth's case when both the assistant district attorney and appellant himself expressed a desire to wait until defense counsel should return. We believe that before manifest necessity would arise such an inquiry should have been made. We also find that the interests of justice were not subverted when the length of counsel's delay had not been more definitely ascertained.

■■ Jeopardy attached because a jury had been impaneled. Because of the interest of appellant to be tried by this panel, and due to the want of manifest necessity or defeating of the interests of public justice to sustain the granting of a mistrial, we hold that the principles of double jeopardy prevent a retrial of this appellant and that the lower court abused its discretion in so allowing.

Judgment of sentence reversed and appellant discharged.

WATKINS, President Judge, dissents.

2. This apparent gross impropriety on the part of defense counsel was a matter to be dealt with after conclusion of the trial of the case from which he had absented himself.